UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 95-75-09 ML |
| | : | |
| EDWIN A. ORTEGA | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Edwin A. Ortega ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a hearing was conducted on January 4, 2006. At that time, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to a term of imprisonment of thirteen (13) months with no further supervision.

**Background**

On September 24, 1997, Defendant appeared before the Honorable Mary M. Lisi, United States District Judge, after pleading guilty on April 26, 1996, to violating the Racketeering Influenced Corrupt Organization Act (Count One), conspiracy to commit racketeering (Count Two), conspiracy to commit murder (Count Five), conspiracy to possess with intent to distribute heroin, marijuana, and cocaine base (Count Ten), distribution of heroin (Count Eleven), and distribution of cocaine base (Count

Twelve). Judgment (Document ("Doc.") #863). Defendant was sentenced to eighty-four months imprisonment on all counts to run concurrently, id. at 3, with five years supervised release on Counts One and Two and three years supervised release on Counts Five, Ten, Eleven, and Twelve, id. at 4. As a special condition of release, Defendant was ordered to participate in a substance abuse treatment program as approved and monitored by the Probation Department. Id.

Supervised release commenced on January 18, 2002, with an expiration date of January 17, 2007. Report and Recommendation of 4/22/05 (Doc. #1088) at 2. On March 5, 2003, Defendant appeared before the court and admitted to multiple violations of the standard condition of supervised release that he not commit another federal, state, or local crime. Report and Recommendation of 3/14/03 (Doc. #1006) at 1-3. Specifically, Defendant admitted to driving with a suspended license (on two separate dates), committing misdemeanor larceny, resisting arrest, leaving the scene of an accident, and possessing marijuana. Id. On April 8, 2003, Defendant was sentenced for these violations to ten months imprisonment with fifty months supervised release to follow. Judgment (Doc. #1008) at 3-4. As a special condition of release, Defendant was ordered to participate in and satisfactorily complete a program of substance abuse treatment and testing. Id. at 5.

Supervised release re-commenced on December 24, 2003, with an expiration date of February 23, 2008. Report and Recommendation of 4/22/05 (Doc. #1088) at 2. On May 19, 2005, Defendant appeared before the court after admitting to the following violations of his supervised release conditions: 1) new criminal conduct as evidenced by his convictions on January 26, 2005, of simple domestic assault, violation of a restraining order, and driving with a suspended license; 2) unlawful use of a

controlled substance as evidenced by his March 14, 2005, admission that he had used cocaine and positive urinalysis test result for a specimen which he submitted on April 30, 2004; 3) failure to report an arrest within seventy-two hours on two occasions, November 1, 2004, and January 26, 2005; and 4) failure to complete a substance abuse treatment program as evidenced by his discharge from the Phoenix House Substance Abuse Treatment Program on January 31, 2005. Report and Recommendation of 4/22/05 (Doc. #1088) at 3-6. Defendant was sentenced for these violations to six months imprisonment on Counts One, Two, Five, Ten, Eleven, and Twelve, with forty-three months supervised release to follow Counts One and Two. Judgment (Doc. #1090) at 3-4. As special conditions of release, Defendant was ordered to spend the first six months in a community corrections program at the Coolidge House Comprehensive Sanctions Center in Boston, Massachusetts, participate in mental health and substance abuse treatment programs, and participate in an employment training program. Id. at 5.

On September 7, 2005, the Bureau of Prisons notified the Probation Department that, due to the presence of Latin King defendants at the Coolidge House, Defendant would be placed in an alternate program. Supervised Release Violation Report of 11/30/05 at 2. Upon release, he was designated to the Lawrence Correctional Alternative Center in Lawrence, Massachusetts, in lieu of the Coolidge House. Id. On November 1, 2005, in response to Defendant's discharge from the community corrections program for drug use, the Probation Department filed a modification request to add a condition permitting inpatient substance abuse treatment. Id. On November 2, 2005, Chief U.S. District Judge Ernest C. Torres approved the modification for inpatient substance abuse treatment and suspended the remaining community corrections term. Supervised Release Violation Report

of 11/30/05 at 2.

Supervised release commenced on September 30, 2005, with an expiration date of April 29, 2009. Id. On or about December 5, 2005, Senior U.S. Probation Officer Brian Pletcher ("U.S.P.O. Pletcher") filed a Petition for Warrant for Offender under Supervision (the "Petition"), alleging that Defendant had violated one standard condition and two special conditions of supervised release. See Petition (Doc. #1097).

**The Violation**

The Supervised Release Violation Report dated November 30, 2005, alleges that Defendant has violated the following conditions of supervision in the manner indicated:

**Standard Condition: Defendant shall refrain from any unlawful use of a controlled substance. Defendant shall submit to one drug test within fifteen days of release from imprisonment or placement on probation and at least two periodic drug tests thereafter.**

On October 28, 2005, Defendant admitted to U.S.P.O. Pletcher that he used heroin on October 24, 2005, and cocaine on October 25, 2005, while serving a six month community corrections sentence at the Lawrence Correctional Alternative Center in Massachusetts. Defendant had been referred to this facility to commence his court-ordered six month community corrections sentence on September 30, 2005. On October 28, 2005, Defendant reported to the Probation Office after he had been administratively discharged from the program for using illicit drugs. Defendant admitted that on October 24, 2005, he had smoked a heroin-laced cigarette and also admitted using cocaine on October 25, 2005. Reportedly, the drugs were smuggled into the facility by another resident.

**Special Condition: Defendant shall serve six months of his term**

**of supervision at the Coolidge House Comprehensive Sanctions Center in Boston, Massachusetts.**

On October 25, 2005, Defendant was administratively discharged from the Lawrence Correctional Alternative Center in Lawrence, Massachusetts, after testing positive for opiates on October 24, 2005. Defendant had been designated to this facility as an alternative to the Coolidge House because of the presence of Latin King defendants at the latter facility.

**Special Condition: Defendant shall participate in an inpatient treatment program as approved by the U.S. Probation Office.**

On November 24, 2005, Defendant was administratively discharged from inpatient substance abuse treatment after he failed to return from an authorized day pass for the Thanksgiving holiday. As to this violation, following Defendant's administrative discharge from the Lawrence Correctional Alternative Center on October 25, 2005, the Probation Department, with the concurrence of the U.S. Attorney's Office and the Federal Public Defender's Office, petitioned the court to amend Defendant's conditions by adding a condition for inpatient substance abuse treatment. On November 2, 2005, Judge Torres approved the condition and Defendant entered the Gosnold Treatment Program ("Gosnold") in Falmouth, Massachusetts, on November 4, 2005. On November 21, 2005, Defendant was transferred to the Stephen Miller House ("Miller House") for the therapeutic community component of Gosnold.

On November 22, 2005, Defendant approached his counselor, Warren Robinson, and requested an overnight pass for the Thanksgiving holiday on Thursday, November 24, 2005, until Friday, November 25, 2005. Mr. Robinson advised Defendant that new arrivals to the Miller House are only granted day passes and that they are issued with the probation officer's approval. On November 22, 2005, Defendant contacted Senior U.S. Probation

Officer Kathleen Hopkins ("U.S.P.O. Hopkins") and stated that he would be approved for an overnight pass if she consented. However, when U.S.P.O. Hopkins called Mr. Robinson to verify the request, she was informed that Defendant, as a new arrival, was not permitted on an overnight pass and was attempting to manipulate the matter. Later, on November 22, 2005, U.S.P.O. Hopkins spoke with Defendant and reaffirmed that he was only permitted to travel to Rhode Island for a day pass on November 24, 2005. Early on November 24, 2005, Defendant departed for his day pass to Providence, Rhode Island.

On November 25, 2005, U.S.P.O. Hopkins received a call from Jim McGrail, Program Director at the Miller House, who advised that Defendant had not returned from his pass on Thursday evening, November 24, 2005, as required. He further stated that Defendant called at 11:00 p.m. on Thursday evening and stated that he had gone to the wrong bus station in Providence and missed the last bus. Mr. McGrail advised that due to Defendant's dishonesty and manipulation he would not be permitted back into the program and was administratively discharged.

**Travel**

On December 6, 2005, Judge Lisi ordered the issuance of a warrant for Defendant to appear to answer to the alleged violations. Doc. #1097 at 3. The warrant was executed, and Defendant appeared before this Magistrate Judge on January 4, 2006. At that time Defendant was advised of the Petition and of the grounds for the alleged violations. Defendant, both personally and through counsel, waived a violation hearing and admitted to the violations. This admission satisfied the court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. After receiving sentencing recommendations from both the Government and the defense and hearing from Defendant personally, the court stated

that it would recommend the sentence expressed in this Report and Recommendation.

**Law**

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of supervised release was previously imposed. Therefore, the term cannot be extended.

Pursuant to Section 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than five years in prison if the offense that resulted in the term of supervised release was a class A felony. Here Defendant was on supervision for a Class A felony. Thus, he may not be required to serve more than five

years imprisonment upon revocation. However, since Defendant has already served sixteen months imprisonment as a result the two previous revocations, the statutory maximum term of imprisonment remaining is forty-four months.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here five years), less any term of imprisonment imposed upon revocation of supervised release. See id.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most

serious grade. In this case, Defendant has committed a Grade C violation.

Pursuant to Section 7B1.3(a)(2) of the U.S.S.G., upon a finding of a Grade C violation, the court may revoke, extend, or modify supervision. However, the statutory maximum term of supervised release has already been imposed. Therefore, the court may not extend supervision, but may revoke or modify it.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The second provision, which allows for alternatives for one-half of the minimum term, applies to this matter.

According to Section 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served

in addition to the sanction determined under §7B1.4. In this case, there is no outstanding restitution, fine, community confinement, home detention, or intermittent confinement.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is five years. There has been a total of sixteen months imprisonment previously imposed for violations of supervised release. Therefore, the court may impose the above-noted statutory maximum, minus the sixteen months previously imposed, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to Section 7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of V at the time of sentencing. The Revocation Table contained in Section 7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of V, an imprisonment range of seven to thirteen months is warranted.[1]

[1] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

## Disposition

### Recommendations By Government and Defense

The Government recommended that the court impose a sentence of twenty-four months imprisonment with no further supervision. The Government noted that although the present violations are minor, this is Defendant's third violation. Additionally, Assistant United States Attorney ("AUSA") Gerard Sullivan observed that Defendant has not been amenable to supervision, that he does not follow the requirements of the law, and that despite receiving lenient sentences for his prior violations he has not used those opportunities to his advantage. AUSA Sullivan also stated that if Defendant were given a period of supervised release he would most likely violate the conditions again and that, therefore, the Government was not recommending a further period of supervised release.

Defense counsel Edward Roy recommended that the court impose a sentence of thirteen months with no further supervision. Mr. Roy emphasized that the violations were self-destructive acts and not new criminal offenses. Citing the requirement that the sentence be sufficient but no greater than necessary, Mr. Roy asked the court to impose a sentence of thirteen months.

Defendant spoke on his own behalf. He stated that he did not want to make excuses for his conduct, that he knew that his drug use hurt his children and his girlfriend (whom he wants to marry), that he started using drugs only when he got out of prison, that he is not sure why he started but he thought he may have been using controlled substances as an escape valve, that he considers himself a hard worker and a good person, and that he

wants to get back into society. Defendant indicated that he has been drug-free since his admission of using cocaine and the dirty urine test and that he is hopeful he will not come back to court on a new criminal charge. He expressed the desire to return to school someday and to obtain a job that pays at least ten dollars an hour.

**Discussion**

Although this is Defendant's third violation of supervised release, the Government's recommendation of twenty-four months imprisonment strikes this Magistrate Judge as excessive. Defendant has not committed any new crimes. His violation is a Grade C violation, the least serious of the three levels of misconduct. If he were not on supervised release, his conduct would not have even come to the attention of the authorities. This circumstance factors heavily in the court's conclusion that a sentence of two years is not warranted.

It is certainly true that defendants cannot be allowed to violate the conditions of supervised release with impunity and that repeat violators should be punished more harshly than first-time violators. However, a sentence of thirteen months, which is at the high end of the guideline range, is in the court's judgment ample punishment. It is long enough to deter others who might otherwise be tempted to violate the conditions of supervised release if they perceive that violations are not viewed seriously by the court. It is also sufficient to adequately sanction Defendant.

The court agrees with the Government that Defendant is not amenable to supervision and that there should be no further supervision. Such supervision would not be a good utilization of the Probation Department's resources. Such resources would be better invested in attempting to help other defendants who are more likely to benefit from the investment.

Lastly, as the court made clear to Defendant at the January 4, 2006, hearing, if he had violated supervised release by committing new criminal conduct, the court would view the Government's recommendation of two years in an entirely different light. Defendant should bear this in mind.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to a term of imprisonment of thirteen (13) months with no further period of supervised release. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
January 12, 2006